# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHAV, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | C.A. No.: N24C-09-206 CEB |
| v. | ) | |
| | ) | |
| LEARNING EXPRESS | ) | |
| ACADEMY, INC., | ) | |
| JENNIFER VALENTINE, | ) | |
| AND GERARD | ) | |
| VALENTINE, | ) | |
| | ) | |
| **Defendants.** | ) | |

Submitted: January 9, 2025
Decided: March 31, 2025

## ORDER

1. The parties before the Court executed a lease agreement for commercial property for a ten-year term, beginning on August 1, 2006, with two 5-year options exercisable by the tenant. It was a standard commercial lease with one feature that figures importantly here. Specifically, the term "tenants" was defined as "Learning Express Academy, a limited liability company of the State of Delaware and Jennifer and Jerry Valentine, parties of the second part, hereinafter referred to as "Tenants."

2. The original lease term expired on July 31, 2016. Neither side has presented any allegation, argument, or evidence that the parties exercised the option to renew as provided in the original lease. Rather, the parties executed a "First Amendment to Lease Agreement" on August 21, 2015. That amendment included

the identification of the only "Tenant" as "Learning Express Academy, LLC (hereinafter referred to as "Tenant").[1]

3. Clearly then, the amendment executed in 2015 removed Jennifer and Jery Valentine as "Tenants" under the lease. The only lessee going forward after 2015 was the entity "Learning Express Academy."[2] It was for a term beginning on August 1, 2015, and ending on July 31, 2025. We would not be considering all this if everything went swimmingly for Learning Express Academy thereafter. Rather, at some point the business failed, rents were not paid, the company ceased doing business and vacated the property.[3]

4. The Valentines signed the 2015 lease amendment as "President" and "Vice President" of Learning Express Academy.[4] The signature lines did not include lines for the Valentines to sign in their individual capacities, and they did not do so. Rather, the signature lines identified only as "Learning Express Academy, LLC" as

---

[1] D.I. 1 Compl. Ex. B. First Amendment to Lease Agreement at 1-2 (Aug. 21, 2015), Trans. ID 74564835 [hereinafter First Amendment to Lease Agreement].

[2] *Id.*

[3] D.I. 18 Opening Br. of Defs. at 1-2 (Nov. 25, 2024), Trans. ID 75086508 [hereinafter Opening Br. of Defs.].

[4] Ex. B. First Amendment to Lease Agreement at 2.

the "Tenant."[5] So at the beginning and at the end of the lease amendment, Learning Express Academy was the tenant and the Valentines were not.

5. A simple reading of the documents makes it abundantly clear that one of the purposes in executing the lease amendment (and not simply an extension under the option in the original lease) was to remove the Valentines from any personal obligations under the lease. For that is most surely what the lease amendment did.

6. And yet, here sit the Valentines, on the caption of this lawsuit seeking their personal liability under the amended lease. About the only justification for their presence here is Plaintiff's contention that they remain personally liable because the parties did not execute a release from liability under the original lease when the amendment was signed in 2015.

7. Well, the original lease expired in 2016.[6] It was not renewed. It was amended to remove the Valentines as tenants. If there is some obscure doctrine requiring a tenant to secure a release from the landlord before shedding responsibilities under an expired lease, Plaintiff has not directed the Court to its source. The Valentines cannot be held in their individual capacities under the amended lease and they are therefore dismissed.

---

[5] *Id.*

[6] D.I. 1 Compl. Ex. A. Lease Agreement at 1-2 (Sept. 25, 2005), Trans. ID 74564835.

8.      As to the now apparently defunct Learning Express Academy, LLC, it argues that dismissal of the Complaint is proper because this is the third effort to bring the Learning Express Academy into court by the same Plaintiff.  It says Plaintiff sued it once in Superior Court and voluntarily dismissed after Defendants moved to dismiss, pointing to various deficiencies in Plaintiff's original complaint.[7] Plaintiff next filed virtually the same lawsuit in a Justice of the Peace ("J.P.") action.  Learning Express Academy moved to dismiss that case and again Plaintiff voluntarily dismissed that action as well.[8]

9.      Plaintiff says it brought the J.P. Court action under 25 *Del. C.* §5701B, which specifically permits a bifurcated action: one for summary possession and another for back rent damages.  But that does not really explain much, since the complaint in the J.P. Court is not bifurcated: it seeks substantial damages as well as summary possession.  So the rationale for filing in the J.P. Court does not match the filing.  Defendants moved to dismiss and . . . poof; Plaintiff again unilaterally dismissed "without prejudice."

10.      Defendant protests that defending these multiple actions runs afoul of Rule 41(a)(1) of the rules of civil procedure.  Rule 41 permits unilateral and

---

[7] D.I. 10 Notice of Voluntary Dismissal (June 6, 2024), *Chav v. Learning Express Academy*, N24C-04-091 (Del. Super. June 6, 2024).

[8] Opening Br. of Defs. at 11.

voluntary dismissal without prejudice, except "when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim."[9] Defendant calls this the "two dismissal rule," which is somewhat descriptive, but misses some nuance. When claims are mistakenly brought under the residential landlord tenant code and withdrawn to be re-filed correctly, is that "the same claim?" When a statute permits bifurcation of claims in two courts, which is "the same claim?" Because the purpose of the rule is to avoid vexatious litigation,[10] should the good faith or bad faith of the repeat filer be considered?

11.    The Court must state candidly that Plaintiff's pursuit here is hardly a model of legal craftsmanship. And in light of the apparent financial condition of Defendant Learning Express, it is not at all clear what the point of all this is. But given the early stage of the pleadings, the Court is not prepared to take the plunge and grant dismissal at this stage. If Plaintiff persists in its desire for a judgment against Learning Express, Learning Express can take discovery into these prior pleadings and their motivation and come back with a clearer articulation of its

---

[9] Super. Ct. Civ. R. 41(a)(1).

[10] *City of Wilmington v. Janeve Co.*, 2014 WL 2895228, at *3 (Del. Super. June 13, 2014) (citing *In re Chi-Chi's, Inc.*, 338 B.R. 618, 621 (Bankr. D. Del. 2006)).

position that Rule 41 ought to act as *res judicata* as to its liability.  For now, the Court will deny Learning Express' motion to dismiss without prejudice.

**IT IS SO ORDERED.**

/s/ **Charles E. Butler**
Charles E. Butler, Resident Judge

cc:      Alicia A. Porter, Esquire
M. Jane Brady, Esquire
Theodore A. Kittila, Esquire